UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES FREDRICK MOORE,<br><br>Defendant. | Case No. 25-mj-205 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

Police found Defendant James Fredick Moore under the influence of an unknown substance with a loaded handgun tucked in his waistband. Moore was not supposed to have a gun. He admitted he did not have a license. And he had been previously convicted of numerous crimes including at least two firearm-related felonies—carrying a pistol without a license and possessing a firearm despite being a convicted felon. Beyond that, the gun was a privately made firearm—not one manufactured by a federally licensed dealer—with no serial number. And Moore was on probation for an assault charge too.

The United States requests that Moore be detained pending trial. Moore is eligible for pretrial detention because this case involves a felony that involved a firearm, *see* 18 U.S.C. § 3142(f)(1)(E), and because Moore's history shows that he presents a serious flight risk, *see id.* § 3142(f)(2)(A). Furthermore, Moore is eligible for temporary detention because he is and was at the time of the charged offense on probation for a state crime. *See id.* § 3142(d)(1)(A)(iii). The Court should order Moore's detention because there are no release conditions that could reasonably assure the community's safety or his appearance at the proceedings against him.[1]

---

[1] Moore is currently charged with unlawful possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Before the detention hearing on September 9, 2025, the

1

**BACKGROUND**

I.   **Facts of the Offense**

In the afternoon of September 3, 2025, 911 emergency services received a report that an unconscious man on the sidewalk had a gun in his rear waistband or back pocket. The man was later identified as James Fredrick Moore. He was lying unconscious on the sidewalk outside a liquor store at 1st Street and Florida Avenue NW, a busy intersection with a playground, businesses, and residences. Two witnesses passing by had tried to help Moore sit up when one of them noticed the gun. Moore started acting "belligerent," the witnesses later explained to police, so they became afraid that he might think they were robbing him and use the gun against them.

Metropolitan Police Department Officer Anthony Allison arrived on the scene a few minutes later. The two witnesses immediately directed him to Moore. Officer Allison asked the witnesses where the gun was, and one pointed toward the back of Moore's waistband. When Officer Allison pulled up Moore's jacket to locate the firearm, Moore exclaimed, then began to move. Officer Allison subdued him. MPD Sergeant Anthony Gaton-Garcia arrived shortly after and helped Officer Allison place Moore in handcuffs. In the process, Officer Allison retrieved a clearly visible handgun from the back of Moore's waistband. Once Moore was handcuffed, Officer Allison asked him if he had a license to carry a firearm. Moore replied that he did not.

---

government plans to file an amended complaint based on the same statement of facts charging Moore with (1) unlawful possession of ammunition in violation of 18 U.S.C. § 922(g)(1); and (2) unlawful possession of a firearm under D.C. Code § 22-4503(a)(1). The grounds for detention remain the same.



*Figure 1: Officer Allison Retrieves the Handgun*

D.C. Fire and EMS personnel soon arrived to evaluate Moore. During Moore's interactions with MPD officers and D.C. Fire and EMS personnel, he appeared to be under the influence. He mumbled, seemed to have difficulty hearing and understanding, and drifted in and out of consciousness. A search incident to arrest uncovered in Moore's sock a rolled-up piece of paper and two small straws. Inside the paper was a clear plastic baggie that contained a white powdery substance. That substance later field-tested positive for amphetamines. Notably, Pretrial Services reports that, on the day of Moore's initial appearance, he tested positive for fentanyl.

 

*Figures 2 and 3: The Straws and Rolled-Up Paper*

Moore also repeatedly provided the responding personnel a name other than his own—a name that law enforcement databases indicate belongs to a different, real person in the Washington metropolitan area. Eventually, however, D.C. Fire and EMS personnel learned Moore's real name. They transported Moore to Howard University Hospital for a medical evaluation.

A search of the MPD's Real Time Crime Center confirmed that Moore does not have a license to carry a firearm in the District of Columbia. In addition, the firearm seized from Moore's person was a privately made firearm or "ghost gun" that lacked a serial number. It had six rounds of ammunition loaded into an attached magazine.

## II. Moore's Criminal History

This incident is not Moore's first contact with the criminal justice system. Pretrial Services reports that he has been previously convicted of at least 12 crimes, several of which were punishable by more than one year of imprisonment.

Especially relevant here, Moore was convicted of several firearm offenses in D.C. Superior Court in 2010. He received a 16-month sentence for carrying a pistol without a license, a 20-month sentence for being a felon in possession of a firearm, and a pair of 1-year sentences for the

4

unlawful possession of a firearm and ammunition. After Moore served the sentences of imprisonment, the Court eventually revoked his supervised release and reimprisoned him.

In 2017, Moore was convicted in D.C. Superior Court of felony contempt. He pled guilty to the offense as part of a plea agreement that resulted in the dismissal of a Bail Reform Act felony charge (2017 CF2 018127) and a second-degree theft charge (2017 CMD 006665). Superior Court records for the felony contempt case (2017 CF2 009778) indicate that Moore was initially sentenced in November 2017 to a six-month sentence of imprisonment with three months of that sentence suspended pending a one-year probationary period. By April 2018, however, Moore's probation was revoked, and he received an additional 45-day sentence of imprisonment.

Most recently, Moore was convicted in 2023 of second-degree assault in Montgomery County. He received a two-year sentence of imprisonment with a year and half of that sentence suspended pending a two-year probationary period. In fact, Moore is still on probation for that offense. While the probationary period is set to expire on September 11, 2025, Moore failed to appear enough times that a probation violation warrant was issued back on February 3, 2025.

In addition to all those crimes, Moore has been convicted for a variety of others, including simple assault and sex abuse in 2012, for which he received 180-day sentences of imprisonment, violating a civil protective order, and several theft offenses. He has also been the subject of at least ten bench warrants.

## ARGUMENT

A court must detain an eligible defendant pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In making that assessment, the court considers four familiar factors: (1) the nature and circumstances of the offense charged; (2) the

weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger the defendant's release would pose. *Id.* § 3142(g). A finding that release conditions cannot reasonably assure a defendant's appearance must be supported by a preponderance of evidence. *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019). A finding that release conditions cannot reasonably assure the community's safety must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

This Court should detain Moore pending trial because he poses both a danger to the community and a risk of nonappearance. All four detention factors support detention.

### I.     The Nature and Circumstances of Moore's Offense Are Serious.

Unlawfully carrying a firearm by itself is a serious offense—an offense so serious that it carries a maximum sentence of 15 years in prison. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *6 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United States v. Gassaway*, No. 1:21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases for the proposition that "unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public"). Indeed, when it comes to pretrial detention, whether a crime involves a firearm is such an important consideration that Congress explicitly advises courts to pay particular attention when it does. *See* 18 U.S.C. § 3142(g)(1).

Here, Moore did not just unlawfully possess a firearm. He carried a loaded gun while under the influence. *See United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("The crime charged is undeniably serious and the possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) ("If, as the Government alleges, Cole was under the influence of

cocaine and opiates at the time of the offense, this only heightens the risk of violence."). He carried the gun while on probation for an assault offense. *See Blackson*, 2023 WL 1778194, at *8 ("[D]efendant was on supervision at the time of his arrest making evident his disregard of the law forbidding his possession of a firearm and automatically raising concern about whether he can be trusted to comply with any conditions of pretrial release."). And the gun he carried lacked a serial number and is therefore untraceable. *See United States v. McSwain*, No. CR 19-80 (CKK), 2019 WL 1598033, at *3 (D.D.C. Apr. 15, 2019) ("The present charges also involve a weapon that lacks a serial number; this 'ghost gun' is therefore untraceable by law enforcement. The Court is concerned about the potential reasons why Mr. McSwain was carrying a loaded and untraceable firearm.").

Moore's actions put the community in grave danger. And the fact that he committed the charged offense while on probation and using an untraceable gun show that he is likely to disregard any release conditions this Court could set. The first factor thus weighs heavily in favor of detention.

## II. The Weight of the Evidence Against Moore Is Strong.

There can be little dispute over the facts of Moore's offense. Witnesses reported that Moore was unconscious on the sidewalk with a gun in his waistband. A surveillance camera corroborated their accounts of their interaction with him. MPD officers soon arrived with body-worn cameras activated. The cameras captured officers retrieving a firearm from Moore's person and Moore admitting that he does not have a license to carry a firearm. In addition, Moore's criminal history establishes not only that he has been convicted of several crimes punishable by more than a year of imprisonment but also that he knew it: he has received several sentences of more than a year of imprisonment—most significantly a 20-month sentence for being a felon in

7

possession of a firearm. Moore thus must have also known specifically that he was prohibited from carrying a firearm. That is likely why he repeatedly gave responding officials a false name. In sum, the weight of the evidence against Moore is strong and favors detention.

### III.     Moore's History and Characteristics Indicate that Detention Is Necessary.

Moore's long criminal history demonstrates a consistent pattern of putting others in danger, refusing to face the consequences of his actions until forced to, and failing to abide by court orders.

The offense Moore is charged with is no aberration. Over the last thirty years, he has repeatedly put the community in danger—including by unlawfully carrying firearms, committing assaults, and stealing. *See Gassaway*, 2021 WL 4206616, at *4 (observing that a Section 922(g)(1) defendant's prior firearms offenses weighed in favor of detention); *Riggins*, 456 F. Supp. 3d at 147 (listing a defendant's prior convictions for crimes including assault, unlawful possession of a firearm, and larceny before concluding that the defendant's history and characteristics favored detention). These crimes were not victimless. And Moore has shown no sign of stopping. If anything, his crimes have become more frequent.

Furthermore, failing to appear for court proceedings is the norm for Moore, not the exception. In almost all the criminal cases in which Moore has been convicted, he was the subject of a bench warrant—often two. For instance, in one of his more recent cases in D.C. Superior Court (2020 CMD 002840), Moore's absences led the court to issue a bench warrant, a warning, and then a second bench warrant. Records for that case also indicate that Moore's lawyer had difficulty staying in contact with him. And in addition to the ten bench warrants the Pretrial Services Report identifies, Moore was the subject of a probation violation warrant at the time he committed the offense in this case because he had failed to report on multiple occasions.

Moore has not just ignored court orders to appear; he has habitually disobeyed other court orders too. Once again, he committed the offense in this case—which involved the unlawful possession of a loaded firearm and the use of narcotics—while he was on probation for an assault crime. He has even been convicted of three crimes for disobeying court orders: felony contempt in 2017 (2017-CF2-009778); violating a civil protection order in 2003 (2002-CMD-004535); and a Bail Act violation in 1993 (1993-FEL-008269). And Pretrial Services reports that Moore has had probationary sentences revoked on no less than four occasions: in his shoplifting case in 2016 (2016-CMD-O 12840); his assault and sex abuse case in 2014 (2012-DVM-000681); his unlawful firearm possession case in 2014 (2008-CF2-025039); and his reckless driving case in 2002 (2001-CTF-067630). The Court cannot trust that Moore will obey any release conditions that it imposes.

### IV.     Moore's Release Would Jeopardize the Community's Safety.

Moore has proven himself to be a danger to the community. His long criminal history includes three assault convictions and unlawful firearm possession convictions. *See Gassaway*, 2021 WL 4206616, at *5 ("Gassaway's history of recidivist behavior involving firearms provides clear and convincing evidence that he will not be deterred from engaging in similar conduct again."). Now, he has again unlawfully possessed a loaded firearm and did so while intoxicated, putting members of the community in grave danger of serious bodily harm. *See Cole*, 459 F. Supp. 3d at 121 (holding that a defendant posed a danger to the community because he was "a convicted felon on supervision for a violent offense involving the use of a firearm" and "was under the influence of narcotics on the street in a residential area in possession of a concealed, loaded, stolen firearm"). What is more, Moore acted so irresponsibly while he was already on probation for his latest assault offense. *See Riggins*, 456 F. Supp. 3d at 148 (holding that a defendant was a danger to the community when he illegally possessed a firearm, tested positive for PCP at the time of his

arrest, and was on probation for an assault offense). Moore has shown that his release would pose a significant risk of serious physical harm to the community that release conditions cannot mitigate.

## CONCLUSION

The government asks the Court to detain Moore pending trial because he would otherwise pose a danger to the community and be unlikely to appear at the proceedings against him.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    */s/ Blake J. Ellison*
BLAKE J. ELLISON
Assistant United States Attorney
TX Bar No. 24117203
601 D Street NW
Washington, D.C. 20530
Phone: 202-436-5921
blake.ellison4@usdoj.gov